Good morning. May it please the court, Charles Bonneau appearing for Appellant and Petitioner Greg Lanier Harris. Your Honor, this case involves two issues that have been briefed. One involves the question of ineffective assistance of counsel to the trial attorney to decide not to call the defendant to testify on his own behalf. The other issue has to do with the correct standard to evaluate waivers where the defendant does not take the stand and later alleges that he believed that he was to take the stand and wanted to take the stand and understood that he would take the stand. I'd like to address the question of ineffective assistance of counsel. I'd like to suggest to the court that in any case that arises in this posture where we are arguing that the defendant didn't testify, it was due to the attorney's decision, and that the decision not to have him testify was ineffective, that the court should look at three factors, the relative strength of the prosecution case, the defendant's credibility. Before you go on, are you basing this ineffective claim now on, one, the fact that it would have been helpful to his case to testify, or two, that simply making the decision, that is, the lawyer making the decision himself without consulting the client, without more amounts of ineffective assistance, or both? Well, we're arguing both. The second way you have it phrased is a little more like the defendant's fundamental right to testify, which is impinged in these circumstances. That's addressed more in our argument one. We feel that since this is a fundamental right, that there's a different level of scrutiny that should be applied. Yes. Is it helpful? That's probably an understatement. It's probably more accurate to say that it's essential on this record. The decision, again, I'd like to suggest that these are three factors that the court should consider whenever this kind of claim comes up. The decision not to testify is being defended by the state, and I think they have a difficult case. They have a difficult case whenever you have allegations of sexual abuse of a minor. A jury's first reaction will be to accept those allegations and convict the defendant regardless of any corroborating evidence, any absence of corroborating evidence. People generally feel that these allegations are just astonishing outside the realm of normal experience and couldn't be made and wouldn't be made unless they were true. The defense attorney in dealing with this kind of case starts out with a disadvantage. He has to use every weapon that he can, and usually he doesn't have very many because there's not a lot of he can't establish an alibi. The girl lived with him for years. So what does he have other than the defendant's own testimony? I would make it an extremely reasonable decision for the lawyer to decide to call the defendant. On the other hand, you know, I don't it's hard for me to see how when a defense lawyer decides that a defendant shouldn't testify in a criminal case after the consideration that was given, as in this case, how that could be viewed as an unreasonable choice. In other words, to be unreasonable, you have to say, well, any competent defense lawyer or almost all of them would say you've got to put the defendant on. I don't think it's that kind of case or there are lots of reasons for him not to testify. Never that clear cut. This is not something the lawyer did by mistake. You know, he actually went through a mock mock cross examination, right? That's correct. Already to put the put his client on. He decides the last minute. No, it's you know, I make the call. I'm not going to do it. That's that's all true. That, however, doesn't make it a good decision or even a competent decision. If the if any professional, a doctor or a lawyer is doing a good job, it skips a beat and the patient dies. You have to go back and look at whether this was this particular decision was competent in all the circumstances. We know, for instance, that in a lot of cases, criminal defendants carry a lot of baggage when they enter. What exactly is the incompetence? Is it the decision not to have him testify? Is it the failure to make clear to defendants that they had an absolute right to testify? That's that's argument. We're making two arguments that you just stated argument when it seems to be a very difficult argument to make, given how much time and attention was given to that subject, that this wasn't a tactical decision by counsel in the course of trial, which defendants have to live with all the time. It wasn't arrived at lightly or quickly or it wasn't a snap judgment that, however, doesn't make it correct. We've gone back over this. The district court wanted extra evidentiary hearing. We had an evidentiary hearing. We had a deposition in Marysville. We've looked we've really parsed this. No one has ever said that it was a decision that was arrived at lightly. And indeed, I don't intend to castigate or cast any doubt on David Vasquez's competence whatsoever. But this was a mistake. It was a mistake not to have him testify. Mr. Harris would have made a good witness. He was. But how can we conclude that, particularly under the standards for habeas review? You can conclude it because he did testify. And there's a transcript of his testimony from the district court. You can also look at the fact that he's a retired CHP officer and he doesn't carry baggage. He has no criminal record. He didn't give the police some story that he has to disown now. He would have made a good witness. The only thing that was said about him is that his answers run on a little bit. And that's answering the wrong question. Before you use up all your time, let me change the question. Well, I just had a question about the evidentiary hearing. How strong a request did he make, did Harris make to his lawyer to tell him, I want to testify? Well, one thing he did was he invited a friend to come to court to see him testify. He thought he was going to testify. When they put him on the stand, apparently the lawyers were wondering, well, should we have this guy testify? As far as Mr. Harris was concerned, he was practicing his testimony. That was the idea. When he testified at the evidentiary hearing, did he say he was surprised or? He was surprised. Taken by surprise because sometimes they'll stand up and say, Your Honor, I want to be heard. Sure. And sometimes they're put into handcuffs as a result. They are not supposed to do that. And that's part of the state court problem here. What do you mean they're not supposed to do that? The California cases say you have to do that. Well, they also say that you're supposed to speak through your lawyer. And as long as court is in session, you're not supposed to stand up and start arguing about something that you think is important. So you think the general rule comes to specific? The general rule is to keep your mouth shut when you're the defendant. That comes to specific case law that says if you want to exercise your right to testify and your lawyer doesn't call you, you have to make an objection. Well, I think they'd like to have the states would like to have it both ways. Judge Tsushima suggested I actually ask the question. We've got case authority. One of the Edwards case, you note in the brief, which you say needs to be reexamined, but this three-judge panel can't change it. That case authority that says when a defendant is silent in the face of his attorney's decision not to call him as a witness, he has waived his right to testify. Doesn't that control us and end this case? No, it does not answer the question of whether the attorney's decision to keep him off the stand was competent. That's a separate question. That was examined separately. The district court, I thought, did a good job of dividing the two issues. That goes to the waiver issue. Yes, there's a waiver issue. The circuits are split on that issue. But setting that aside for the moment, we still have to look at whether the attorney's decision was competent in keeping him off the stand. Was there any discovery or anything come up in the preliminary hearing or anything to give the lawyer reason to believe his client wasn't as squeaky clean as he thought he was? No. He comes across as squeaky clean. The girl said there was some dirty video in the house. They never found that. He's a retired CHP officer. Nothing came to light that I know of, and I know quite a bit about this case, that casts any other doubt on his character other than what these two girls came up with. I was just reading a transcript the other day on another case, a child molestation case, foster daughter, stepfather case. And his lawyer put him on the stand, and he still got convicted. But it was one of those he-said-she-said cases where there was no evidence other than the victim and the testimony of the father. And I kept asking myself, would I have put him on the stand? In this case, I kept asking myself, why didn't he put him on the stand? Yes, yes. Under the rules that we're bound by on the first part of your point that it was a strategy, it was a wrong strategy decision by the lawyer, I don't think the authorities permit us to send it back to the state court on the first half of the Strickland test, assuming it was bad strategy. It has to – we have to show the prejudice. Mr. Grinnell, well, you can see you're well over your time, but we'll give you a minute for rebuttal. All right? Thank you. Good morning, Your Honors. Good morning. David Edward Eldridge, Deputy Attorney General for Respondent. This was a pretty close case, wasn't it? In other words, in terms of whether or not the attorney's call was reasonable. No, not whether it was. He had a pretty clean client. I mean, it was a retired CHP officer, no felony record. It was almost like, as Judge Goodwin said, the he said, she said kind of a case, right? And there was no denial of the prosecution case. Well, we had – he wasn't all that clean. There was a vibrator or a massager with both his DNA and that of the victim's on him, and he offered no explanation for that, even in his evidentiary hearing testimony. He was found in bed with the – he was in bed with the victim at least twice. That was independently verified. There's no explanation for that in his evidentiary hearing testimony. He's got a diary in which he mentions that, at least in part, the victim's making him horny when he talks to her. Well, but that's subject to interpretation, isn't it? As I recall, that entry was talking to her and her mother, wasn't it? And he said both of them, talking to them, made him horny. He's not clean. It's not testimony that doesn't come without risk, and all that's necessary is for him to get up on the stand and start hesitating, for a jury to conclude he's lying through his teeth and really that the remainder of his testimony can be largely disregarded. So that's – and it's certainly reasonable for an attorney not to take that risk. I mean, one could say, well, it's the only way to offer his testimony. The problem is his testimony is too short. Once the jury concludes he's lying, his case is doomed. All right. You can say – let's say hypothetically it was reasonable for the attorney to say that. But as I understand this case, there's another basis for claiming that there was ineffective assistance, namely that the lawyer had an absolute duty to tell his client that he has a right to testify and to find out from his client whether he wanted to testify and to let the client make that decision. That's the lawyer's absolute duty under his ethical – under the ethical rules. And this lawyer did not do that. Now, that's ineffective assistance. Actually, it's not so much his duty to inform him that he has an absolute right. It's clear that he let him in on the decision. And it's clear that the – He let him in on the decision? He let him in on the decision. What does that mean? The lawyer – I will explain. In this case, the lawyer made the decision, right? I will explain. Through the defense counsel's deposition testimony, he made plain that the defendant agreed to leave it up to counsel. So whether the defendant believes his right is absolute or otherwise, when he is brought – when the consultation is made with him and he agrees, I will let it be your decision. And, in fact, during his sentencing statement, he agrees that – he agreed that they had put on enough, so he didn't actually want to testify. He may have had some inkling, but he ultimately did not agree with the choice that he not testify. I thought at the sentencing he said something like, well, it was a mistake for him not to say something. Didn't he say something like that? He said, I made a mistake. Yeah. That doesn't mean that I didn't choose not to testify. But he agreed. He said it was – you know, it was a mistake. It means he made a decision and now he regrets that decision. That's what a mistake is. He's not saying that he didn't make the decision not to testify, but that he did and that was a mistake. Is that the way the state court read that transcript? In other words – Actually – And the district court, in other words, that – Certainly the district court did. The defendant conceded that he made the decision. Well, certainly that is what is – that's the hiding of the district court. I don't recall offhand whether the state court got into that. State habeas, I mean. I can't give you an answer right off the bat. Certainly the district court reached that conclusion. The other point, and I just want to – there's been talk about whether it was a mistake for defense counsel to even recommend or to conclude that he shouldn't testify. That actually isn't standard. The question is counsel's – That goes to the prejudice, right? No. No, no, no. That goes to whether the decision itself was unreasonable. It's not enough to look back later and say, well, you know, in hindsight, it's clear that was a mistake. Counsel can make errors. His errors have to be unprofessional before they become even deficient. And there's no – It's gone over and over that there was a lot of logic that went into the decision. He gathered the evidence he needed to. He talked to the defendant. He had a practice session. Maybe in the final event, many people conclude, you know, I just think it was a mistake. That doesn't even make it deficient because it was still reasonable, even if ultimately in some sense incorrect. One of the questions, I don't think counsel brought it up in his opening argument, but about the makeup of the jury, and it sounded to me like some people got on that jury whose voir dire would have caused them to be challenged in some courts. But they didn't – he hasn't made any point about that, except that at the evidentiary hearing, the lawyer who tried the case was unhappy with the people who said, well, if he's accused of it and he's here in court, he probably did it. And then they ended up on the jury. Was there anything said about that, any motion for a new trial or anything? One of the strategy concerns that the defense attorney apparently had was that he didn't want this defendant to get on the stand with this jury and slip up in any way in his cross-examination. Now, that's a strategic. I'm not sure there's any jury that he would have been happy with. It's very easy to look back and say this was a terrible jury, and I recall that from the deposition. But that's not to indicate there was any error in picking this jury. And later, when you're making a decision whether to present his testimony, all you can do is deal with the fact that you do have this jury. What county was this in? Thank God. I mean, something like Calusa or something somewhere up there in the Northern Valley. You get a pretty tough jury up there. Northern Sacramento Valley, right? It was in the northern part of the Central Valley. You get a lot of changes of venue from that part. Sutter County, right? Sutter County. Go ahead. Anything else? Actually, and as for the claim whether this court can impose a rule as to what should be taken as to waivers, there certainly is no governing Supreme Court precedent laying down a rule. So even if the circuits are split, this court actually can't go one way or the other based on that in this adepti case. So there is no rule requiring from the United States Supreme Court that. Was there any evidence at the habeas hearing that the defendant renewed his request during the trial? Did he renew his request to the lawyer that I want to testify? Well, the petitioner testified that he did, and in defense counsel's statement, he didn't. Defense counsel stated that if he'd been approached, yes, he knew he could reopen, and so he certainly would allow the defendant to testify. And it appears the district court found that credible. All right, thank you. If I have a minute, I'd like to hit several points to answer questions that came up. The prosecution or the attorney general had Mr. Harris on cross. They could have embarrassed him or gotten him to trip up. At the evidentiary hearing. At the evidentiary hearing. So that opportunity did arise. When he went into this soliloquy, which was run on at the time of the sentence, he was talking about other witnesses that he wished they had put on in his defense. He wasn't he never got I think he was a little confused. He didn't know what was at issue and he didn't talk about his own testimony. As far as jury misconduct, the jury pool, these jurors did state that they did count his failure to testify against him. That was an issue that was raised, but it kind of petered out in the district court level. We don't raise it here. But I did testify at the evidentiary hearing that it was a terrible jury, right? Yes. That was his opinion. Yeah. I, I didn't raise it because I presume that he did the best that he could under the circumstances. He used all of his challenges. I, I, I don't know. But often people. Sometimes that bounces back on. Yeah. You don't you don't necessarily want to use all your challenges because it may get worse. So I presume he did his best, but he did get some jurors that didn't follow the very specific instruction, which is to ignore the failure to testify. Thank you. All right. Thank you. Thank both counsel. The case is submitted for decision.
judges: Goodwin, Tashima, Clifton